1

2

**E-Filed 10/11/06**

3

4

5

6

7

NOT FOR CITATION

8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

**SAN JOSE DIVISION**

11

12

M. DIANE KOKEN, Insurance Commissioner of
the Commonwealth of Pennsylvania, acting in her
official capacity as Statutory Liquidator of Legion
Insurance Company and Villanova Insurance
Company,

13

14

Case No. C 05-03007 JF

ORDER[1] GRANTING THIRD-PARTY
DEFENDANTS' MOTION TO
DISMISS

15

Plaintiff,

16

v.

[re: docket # 81]

17

STATECO INC. dba STATECO INSURANCE
SERVICES, et al.,

18

19

Defendants and Third-Party Plaintiffs,

20

v.

21

MUTUAL INDEMNITY LTD., et al.,

22

Third-Party Defendants.

23

**I.  PROCEDURAL BACKGROUND**

24

**A.  Litigation in this Court**

25

M. Diane Koken ("Koken"), the Insurance Commissioner of the Commonwealth of

26

Pennsylvania, is the Statutory Liquidator of Legion Insurance Company ("Legion") and

27

28

[1]  This disposition is not designated for publication and may not be cited.

1  Villanova Insurance Company ("Villanova").  On July 22, 2005, Koken filed a complaint in this

2  Court against Defendants Stateco Insurance Services ("Stateco"), a California corporation,

3  Thomas Natoli, the president of Stateco ("Natoli"), XYZ Corps. 1-10, and Does 1-10.  Koken

4  alleges that Stateco's failure to collect and remit premiums on behalf of Legion and Villanova

5  resulted in monetary damages to the two companies.

6        On December 21, 2005, Defendants Stateco and Natoli filed a counterclaim[2] and a third-

7  party complaint against Mutual Indemnity Ltd. ("MI"), Mutual Indemnity (Bermuda) Ltd. ("MI

8  Bermuda"), Mutual Indemnity (Barbados) Ltd. ("MI Barbados"), Mutual Indemnity (US) Ltd.

9  ("MI US"), Mutual Indemnity (Dublin) Ltd. ("MI Dublin"), Mutual Holdings (Bermuda) Ltd.

10  ("MH Bermuda"), XYZ Corporations 1 -10, and Does 1 - 10.  The third-party complaint asserted

11  five claims for relief: (1) breach of contract, (2) breach of fiduciary duty, (3) negligence, (4)

12  conversion, and (5) a demand for accounting.  These claims arise from the failure of the

13  insurance program described below.  On April 24, 2006, the Third-Party Defendants moved to

14  dismiss the third-party complaint for improper venue and lack of personal jurisdiction.  The

15  Court did not rule on the motion to dismiss and instead granted Stateco's oral request to file an

16  amended third-party complaint on June 26, 2006.[3]

17        Stateco filed the operative amended third-party complaint ("ATPC") on July 14, 2006.  It

18  asserts the same five claims for relief, but includes Commonwealth Risk Services, LP ("CRS")

19  and Mutual Risk Management, Ltd. ("MRM") as additional defendants.  MI, MI Bermuda, MI

20  Barbados, MI US, MI Dublin, MH Bermuda, and MRM (collectively "Third-Party

21  Defendants"),[4] moved to dismiss the Amended Third-Party Complaint on August 11, 2006.  The

22  Third-Party Defendants assert that the Court should dismiss the case for improper venue, for lack

23

24     [2] The Court dismissed the counterclaim with leave to amend on April 4, 2006.  Stateco
25  filed an amended counterclaim on May 2, 2006.

26     [3] Stateco made this request on June 23, 2006 at the motion to dismiss hearing.

27     [4] The Third-Party Defendant movants do not include CRS.  No filings or representations
    have been made on behalf of CRS.
28

2

1  of personal jurisdiction, and for failure to state a claim upon which relief can be granted.

2  **B. Litigation in Other Jurisdictions**

3  Stateco alleges that MH Bermuda has filed a claim against Stateco in Bermuda seeking

4  reimbursement of funds.[5]  Opp'n Mot. Dismiss at 3.  The Third-Party Defendants allege that

5  Stateco has filed a permissive counterclaim against MH Bermuda.[6]  Mem. P. & A. Supp. Mot.

6  Dismiss at 10.

7  On April 25, 2003, the Supreme Court of Bermuda established a Scheme of

8  Arrangements (the "Scheme") with MRM and any potential creditors under Section 99 of the

9  Companies Act 1981.  Mot. Dismiss at 3.  This Scheme has since been given force and effect by

10  a Permanent Injunction and Order of the United States Bankruptcy Court for the Southern

11  District of New York issued June 10, 2003 pursuant to section 304 of the United States

12  Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*.  Mot. Dismiss at 3.

13

14  **II.  FACTUAL BACKGROUND**

15  **A. The Program**

16  Stateco alleges the following.  Stateco sells insurance policies to rehabilitative facilities.

17  ATPC ¶¶ 1, 20.  CRS, headquartered in Pennsylvania with offices in California,  is the marketing

18  subsidiary of MRM, a Bermuda corporation.[7]  *Id.* ¶¶ 5, 21.  CRS approached Stateco in 1999

19  regarding Stateco's participation in a "rent-a-captive" reinsurance program (the "Program").  *Id.*

20  ─────────────────

21  [5] Stateco alleges that MH Bermuda filed the claim seeking reimbursement under the
22  Shareholder Agreement and pursuant to the Commutation Agreement.  Opp'n Mot. Dismiss at 3.

23  [6] On August 11, 2006 the Third-Party Defendants filed a request for judicial notice of
   Bermuda law regarding the Rules of the Supreme Court.  The Court will grant this request.
24
25  [7] The legal status of CRS is in dispute.  Stateco alleges that it is a subsidiary of MRM.
   This is supported by MRM's Securities and Exchange Commission Form 10-K from the year
26  2000 that lists CRS as "our wholly-owned subsidiary."  Opp'n Mot. Dismiss at 1, Ex. A.  The
   Third-Party Defendants allege that CRS is not a direct subsidy of MRM but rather the marketing
27  division of Legion, MRM's insurance subsidiary.  Decl. David Ezekiel Supp. Mot. Dismiss ¶ 10
   ("Ezekiel Decl.").
28
                                            3
Case No. C 05-03007 JF
ORDER GRANTING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS
(JFEX1)

1    ¶ 21.  Rent-a-captive programs involve the participation of several companies.  *Id.* ¶ 22.  A

2    reinsurance company contracts with a fronting company.  *Id.*  An "offshore captive" company

3    accounts for the reinsurance company's claims and disburses insurance claimant funds to a third-

4    party claims administrator company.  *Id.*  An underwriting and rating company also participates.

5    *Id.*  The Program discussed, and eventually entered into, between CRS and Stateco provided that

6    Stateco, the reinsurance company, was to contract with Legion, the fronting company, while

7    MRM was to act as the "offshore captive."[8]  *Id.*  Numerous reinsurance companies agreed to

8    participate in the Program with each reinsurer receiving a percentage of the overall premiums

9    calculated according to the percentage of risk assumed.  *Id.*

10           **1.  Negotiations and Representative/Sample Agreements**

11           CRS appointed Guy Carpenter & Company ("Guy Carpenter"), a California corporation,

12   to be CRS's agent in bringing together necessary reinsurers for the Program, including Stateco.

13   *Id.* ¶ 24.  Guy Carpenter presented a sample package of Program documents to Stateco including

14   a Property and Casualty Quota Share Reinsurance Agreement (the "Quota Share Agreement").

15   *Id.* ¶¶ 25, 28.  The Quota Share Agreement stated that it was between "Legion and Mutual

16   Indemnity Ltd, and all other companies that are or become part of Mutual Risks Management

17   Ltd. Group (the 'MRM Companies')" and the "Subscribing Reinsurers." *Id.* ¶ 26, Ex. A.  This

18   sample Quota Share Agreement contained a clause requiring parties to submit any disputes to

19   arbitration in Pennsylvania.  *Id.* ¶ 31.  Guy Carpenter also presented a sample document entitled

20   Aggregate Excess of Loss Agreement (the "AEL Agreement") to be entered into between the

21   "Reinsured," meaning Legion and the MRM Companies, and the "Reinsurers" such as Stateco.

22   *Id.* ¶ 27.  This representative AEL Agreement, like the Quota Share Agreement, contained

23   reference to an arbitration article.  *Id.* at Ex. B.  Neither Stateco nor any MRM Company signed

24   either the Quota Share Agreement or the AEL Agreement because they were mere samples

25

26           [8] Stateco alleges, and Third-Party Defendants do not dispute, that Legion is an MRM
     subsidiary.  ATCP ¶ 22.  Stateco alleges that the third-party claims administrator company,
27   Gallagher Bassett, and the underwriting/rating company, PUC, both are also MRM subsidiaries.
     *Id.*

28                                                    4

1    presented in an effort to market the Program.  *Id.* ¶ 25.

2        **2.  The Letter Agreement**

3        On June 30, 1999 CRS presented a three-page letter agreement (the "Letter Agreement")

4    to Stateco following negotiations between CRS and Stateco.  *Id.* ¶ 29.  The Program began

5    operating on that same day.  *Id.*  Stateco alleges that the Letter Agreement reflected the basic

6    components of the Program.  *Id.* ¶ 29.  On June 30, 1999 Stateco and CRS signed the Letter

7    Agreement in California.  *Id.* ¶ 30.  It contained no jurisdiction or venue clauses.  *Id.*   The Letter

8    Agreement specified that MI Bermuda would hold 27% of the collected premiums on behalf of

9    Stateco.  *Id.* ¶ 29.  The Letter Agreement also specified that "Stateco must execute a Shareholder

10   Agreement, Management Agreement, and other documentation as may be required."  *Id.* at Ex.

11   C.

12       **3.  Formalized Agreements**

13       Stateco alleges that Stateco, Legion and the MRM Companies[9] operated under this Letter

14   Agreement for more than a year without "formalized" written agreements governing each

15   component of the Program.  *Id.* ¶¶ 32-33.  Stateco alleges that during this time it committed its

16   clients and several million dollars in premiums to the Program, and that it paid a deposit to MRM

17   of more than $250,000.  *Id.*  Stateco alleges that it later received two agreements for signature,

18   the Management Agreement and the Shareholders Agreement.  *Id.* ¶¶ 34-35.[10]

19       *(a) The Management Agreement*

20       Stateco alleges that it received the Management Agreement on May 9, 2000.  *Id.* ¶ 34.

21   The Management Agreement provided that Stateco would place insurance policies and collect

22   premiums.  *Id.*  The Management Agreement further provided that Stateco would retain

23

24   _____

25       [9] Stateco alleges that the "MRM Companies" operated under this Agreement because the
     sample agreements presented to Stateco (the Quota Share Agreement and the AEL Agreement)
26   had referred to Legion and the "MRM Companies" as a single company.  ATPC ¶ 32.

27       [10] It is unclear exactly who presented the Management Agreement and Shareholder
     Agreement to Stateco.
28

                                        5

1   approximately 16% of the premiums and remit the remaining 74% to Legion.[11]  *Id.*

2       Stateco alleges that the Management Agreement was presented to it as a mere

3   "formalization" of the Program, and that therefore no further discussions or negotiations

4   occurred.  *Id.* ¶ 33.  Stateco claims to have anticipated this document pursuant to the Letter

5   Agreement and to have expected the document to be consistent with the Program as it was then

6   operating.  *Id.* ¶ 33.  The Management Agreement states that it is effective June 30, 1999.  *Id.* at

7   Ex. D.  On May 9, 2000 Legion executed the Management Agreement in Pennsylvania.  *Id.*

8   Stateco executed the Management Agreement in California on May 11, 2000.  *Id.* ¶ 34, Ex. D.

9       ***(b) The Shareholder Agreement***

10      Stateco alleges that it received the Shareholder Agreement in October 2000, and that it

11  was anticipating the Shareholder Agreement pursuant to the Letter Agreement.  *Id.* ¶¶ 33, 35.

12  Stateco also alleges that the Shareholder Agreement was presented to it as a mere

13  "formalization" of the Program already in operation, and that therefore no further discussions or

14  negotiations occurred.  *Id.* ¶ 37.

15      The Shareholder Agreement states that it is "made and entered into as of June 30, 1999 by

16  and between Mutual Holdings (Bermuda) Ltd ["MH Bermuda"] . . . and Stateco."  *Id.* ¶ 42, Ex.

17  E.  The Shareholder Agreement differed from the Letter Agreement in two significant ways.

18  First, the Letter Agreement provided that *MI* Bermuda would hold 27% of the collected

19  premiums on behalf of Stateco, whereas the Shareholder Agreement provided that *MH* Bermuda

20  would hold these same funds.  *Id.* ¶ 38.  Second, the Shareholder Agreement contained a forum

21  selection clause providing that the Agreement "shall be exclusively governed by and construed in

22  accordance with the laws of Bermuda and any dispute concerning this Agreement shall be

23  resolved exclusively in the courts of Bermuda."  *Id.* ¶ 36, Ex. E.  Stateco alleges that its

24  president, Natoli, did not notice the forum selection clause before he signed the Shareholder

25  Agreement.  Opp'n Mot. Dismiss at 2.  Natoli signed the Shareholder Agreement on behalf of

26  ─────────────────

27      [11] These figures equal 90%.  It is unclear if this represents a mathematical mistake in
    Stateco's assertions or if the Management Agreement addresses the remaining 10%.

28                                              6

1    Stateco on October 10, 2000 in California.  ATPC ¶ 42, Ex. E.  MH Bermuda signed the

2    Shareholder Agreement on November 6, 2000 in Bermuda.  *Id.*

3    **B. The Treaty and The Commutation Agreement**

4           Stateco alleges that prior to its involvement in the Program, a group of companies entered

5    into an Aggregate Excess of Loss Reinsurance Agreement with Legion (the "Treaty").  *Id.* ¶ 11.

6    Stateco alleges that this group of companies included MI, MI Barbados, MI US, MI Bermuda,

7    and MI Dublin ("Mutual Treaty Companies"), all alleged MRM Companies.  *Id.* ¶ 43.  The

8    Treaty provided that the Mutual Treaty Companies would hold premiums on behalf of reinsurers

9    (such as Stateco) until actual losses for the year were known, at which time the Mutual Treaty

10   Companies would apportion monies held in excess of actual losses between the reinsurance

11   companies in accordance with a separate agreement.  *Id.* ¶ 44.  Stateco alleges that the Mutual

12   Treaty Defendants held the premiums in trust on behalf of the reinsurers.  *Id.*  The Treaty

13   contained a forum selection clause providing that disputes were to be brought in any court of

14   competent jurisdiction in the United States.  *Id.*  Stateco is not a signatory to the Treaty.  *Id.* ¶ 45.

15   Stateco alleges that the Treaty is, however, part of the "Program" because the Shareholder

16   Agreement states that "this Agreement, the Policy and the Treaty together constitute a single

17   insurance program . . . which is a uniquely negotiated single contract and no part of the Program

18   would have been entered into without the other parts being in force."  *Id.* at Ex. E.

19          In April, 2003, M. Diane Koken, on behalf of Legion, negotiated a "Commutation

20   Agreement" with the Mutual Treaty Companies to commute all liabilities and potential liabilities

21   of the Mutual Treaty Companies to Legion.  *Id.* ¶ 47.  This agreement terminated certain

22   programs, including Stateco's.  *Id.* ¶ 48.  This agreement also terminated the Treaty and

23   commuted all actual or potential past, present, or future claims arising thereunder.  *Id.*  MH

24   Bermuda did not sign the Treaty, but the Commutation Agreement refers to certain Shareholder

25   Agreements entered into by MH Bermuda.  *Id.*  The Commutation Agreement describes MH

26   Bermuda as the intermediate parent holding company of the Mutual Treaty Defendants.  *Id.*

27   Stateco alleges that the MRM Companies turned all the funds that they held on behalf of Stateco

28

7

1  over to Legion, although the Commutation Agreement does not require shareholders (such as

2  Stateco) to indemnify the Mutual Treaty Companies. *Id.* ¶ 49.  Stateco alleges that funds held on

3  its behalf were to be used to pay actual losses, not the estimated losses that provided the basis for

4  the Commutation Agreement. *Id.*  Stateco further alleges that Stateco was not consulted by

5  Legion, MI Bermuda, nor MH Bermuda regarding the $1,800,000 of Stateco's funds that MI

6  Bermuda and/or MH Bermuda turned over to Legion under the Commutation Agreement in

7  purported settlement of Stateco's obligations as a reinsurer. *Id.*

8  **C.  Basis of Third-Party Claims**

9       Stateco seeks damages for the alleged failure of all Third-Party Defendants to account

10  properly for amounts due and owing to Stateco under the Program. *Id.* ¶¶ 51, 55, 59.  Stateco

11  also seeks damages from the Mutual Treaty Companies for their alleged conspiracy and funding

12  of the Commutation Agreement without first obtaining approval to use Stateco funds. *Id.* ¶ 63.

13

14

15                                 **III.  DISCUSSION**

16       Stateco asserts this district is the proper venue for the instant action because the forum

17  selection clause in the Shareholder Agreement is invalid.  Alternatively, Stateco asserts that even

18  if the clause is valid, not all of Stateco's claims arise out of the Shareholder Agreement, and

19  Stateco asserts claims against parties who did not sign the Shareholder Agreement.  For the

20  reasons discussed below, the Court concludes that the forum selection clause is valid and

21  enforceable against Stateco,[12] and that the Shareholder Agreement sufficiently connects all of the

22  asserted claims.

23

24

25

26       [12] Because the Court finds the forum selection clause valid and enforceable, it need not

27  address issues raised by the parties with respect to personal jurisdiction or the legal adequacy of

Stateco's claims.

28                                            8

Case No. C 05-03007 JF
ORDER GRANTING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS
(JFEX1)

1

2  **A.  Validity of the Forum Selection Clause**

3      The Third-Party Defendants[13] assert that venue is improper pursuant to the forum

4  selection clause of the Shareholder Agreement, which states that "[t]his Agreement has been

5  made and executed in Bermuda and shall be exclusively governed by and construed in

6  accordance with the laws of Bermuda and any dispute concerning this Agreement shall be

7  resolved exclusively by the courts of Bermuda."  Mem. P. & A. Supp. Mot. Dismiss at 2; ATPC

8  at Ex. E.  Only MH Bermuda and Stateco signed the Shareholder Agreement.  ATPC at Ex. E.

9  MI, MI Bermuda, MI Barbados, MI US, MI Dublin, MRM and CRS did not sign the Shareholder

10  Agreement.[14]

11      Stateco argues that the forum selection clause does not apply because (1) it was

12  fraudulently inserted by MH Bermuda into the Shareholder Agreement and is overreaching, (2)

13  its enforcement is unreasonable and would effectively deprive Stateco of its day in court, and (3)

14  its enforcement would violate public policy.  Opp'n Mot. Dismiss at 4.

15      A forum selection clause may be grounds for dismissal for improper venue pursuant to

16  Federal Rule of Civil Procedure 12(b)(3).  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324

17  (9th Cir. 1996).  When considering a Rule 12(b)(3) motion, a court need not accept the pleadings

18  as true and may consider facts outside of the pleadings.  *Id.* at 324.  However, all reasonable

19  inferences shall be drawn in the light most favorable to the non-moving party.  *Murphy v.*

20  *Schneider National, Inc.*, 362 F.3d 1133, 1143 (9th Cir. 2004).

21      The Ninth Circuit has held that federal rules apply to forum selection questions in

22  diversity jurisdiction.  *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir.

23  _____

24      [13] The Court will refer to MI, MI Bermuda, MI Barbados, MI US, MI Dublin, MH

25  Bermuda, and MRM collectively as "Third-Party Defendants."

26      [14] Stateco alleges that MH Bermuda signed the Shareholder Agreement on behalf of the

27  MRM Companies.  ATPC ¶ 36.  This assertion was repudiated by MH Bermuda at oral argument.

28                    9

1988).  Forum selection clauses are presumptively valid and a party seeking to invalidate such a clause bears a heavy burden of proof.  *Id.* at 10, 17.  A court may invalidate a forum selection clause when (1) the "inclusion of the clause . . . was the product of fraud or overreaching," (2) it results in a party being "effectively . . . deprived of his day in court" or (3) the clause significantly conflicts with public policy.  *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998).

**(1) Fraud and Overreaching**

A forum-selection clause is not enforceable if inclusion of that clause in the contract was the product of fraud or coercion.  *Richards*, 135 F.3d at 1294.  However, unequal bargaining power and non-negotiation of a forum selection clause are not enough to negate the clause. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991).

Stateco argues that the insertion of the forum selection clause constitutes fraud for five reasons:

 First, Stateco alleges that CRS originally presented the Program to Stateco in a "sketchy" form that did not include the forum selection clause, and the Shareholder Agreement was not signed by Stateco or MH Bermuda until seventeen months after the Program began operating. Second, Stateco argues that it did not negotiate the presence of the clause in the Shareholder Agreement, and MH Bermuda did not bring the clause to its attention.  Third, Stateco argues that even if the clause had been brought to its attention, Stateco, which is a small company, already was fully committed to the Program and already had transferred its customer base and invested approximately $250,000 into the Program.  Fourth, Stateco argues that in light of the fact that MH Bermuda had entered into similar shareholder agreements with other American insurance companies as early as 1996, MH Bermuda had no reason not to present the Shareholder Agreement to Stateco at the onset of the program other than to cause Stateco to become "committed monetarily and by the transfer of its customers before presenting . . . a document containing a Bermuda forum selection clause."  Opp'n Mot. Dismiss at 5.  Finally, Stateco asserts that there was no mention or negotiation regarding the clause when the Third-Party

Case No. C 05-03007 JF
ORDER GRANTING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS
(JFEX1)

1   Defendants' representatives had knowledge that the clause was always included as part of the

2   Program as presented to other American insurance companies, and the clause was inserted long

3   after negotiations had occurred and the essential elements of the Program had already been

4   implemented.

5   　　　The Third-Party Defendants argue that Stateco freely entered into the Shareholder

6   Agreement without expressing any reservations regarding the forum selection clause which is

7   clearly set forth in regular font in the Shareholder Agreement.  The Third-Party Defendants also

8   argue that the forum selection clause was part of a commercial agreement between sophisticated

9   business entities.

10   　　　Having considered the evidence in the record, the Court concludes that the inclusion of

11   the forum selection clause into the Shareholder Agreement was not the product of fraud or

12   coercion.  The parties to the Shareholder Agreement are both sophisticated business entities.  The

13   Third-Party Defendants reasonably assumed that Natoli or another responsible officer of Stateco

14   would read the Agreement and understand its terms.  Stateco's relative size and commitment of

15   resources to the Program are not a sufficient basis upon which to conclude that MH Bermuda's

16   insertion of the clause was overreaching.

17   　　　**(2) Deprivation of Day in Court**

18   　　　Stateco asserts that enforcement of the forum selection clause will deprive Stateco of its

19   day in court because the Third-Party Defendants purposely designed the Program to avoid

20   jurisdiction in any single forum.  Stateco asserts that Bermuda is not an available forum for

21   litigation against Legion because of the proceedings initiated in this Court by Koken.  Stateco

22   asserts that its day in court depends on its ability to litigate the entire "package" of documents in

23   a single forum because separate forums might issue conflicting rulings.  In response, the Third-

24   Party Defendants assert that Stateco has failed to allege any facts demonstrating how litigating in

25   Bermuda would deprive Stateco of its day in court when Stateco is already litigating in Bermuda

26

27

28

11

1    against MH Bermuda.[15]

2         A court may invalidate a forum selection clause when a party shows that the forum will

3    be so inconvenient and prohibitive as to deprive the party of its "meaningful day in court."

4    *Pelleport Investors, Inc. v. Budco Quality*, 741 F.2d 273, 281 (9th Cir. 1984).  While a forum

5    selection clause may be unreasonable and unenforceable if the chosen forum is seriously

6    inconvenient for the trial of the action, *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 16

7    (1972), the cost of litigation or the fact that a foreign forum poses inconvenience does not

8    prevent enforcement of a forum selection clause.  *Fireman's Fund Ins. Co. v. M.V. DSR Atlantic*,

9    131 F.3d 1336, 1339 (9th Cir. 1997).  Moreover, where inconvenience of the forum was

10   foreseeable at the time of contracting, the "the party seeking to escape his contract" must show

11   "that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all

12   practical purposes be deprived of his day in court."  *The Bremen*, 407 U.S. at 18.

13        Concerns regarding adjudication of the same issue in separate forums come into play

14   when a court is addressing a motion to transfer under the doctrine of forum non conveniens.  *See*

15   *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 653 F.2d 852, 856 (9th Cir. 1981)

16   (noting that adjudicating the same issue in two separate actions is likely to result in unnecessary

17   delay and substantial inconvenience and may result in inconsistent rulings or even a race to

18   judgement).  However, forum selection clauses call for a distinct analysis.  *See Pelleport*, 741

19   F.2d at 281 (holding that certain facts may be relevant to a forum non conveniens motion but are

20   not persuasive in a forum selection clause analysis); *see also id.* (noting that the Supreme Court

21   has distinguished the inconvenience necessary to establish the unreasonableness of a forum

22   selection clause and the balancing of convenience test appropriate in a forum non conveniens

23   motion) (citing *The Bremen*, 407 U.S. at 18-19).

24        The Third-Party Defendants are not necessary parties to the litigation in this Court

25   _____

26   [15] Stateco alleges that MH Bermuda filed the claim seeking reimbursement under the
     Shareholder Agreement and pursuant to the Commutation Agreement.  Opp'n Mot. Dismiss at 3.

27

28                                              12

between Legion and Stateco.  When feasible, parties should be joined in a lawsuit when their

absence will materially reduce the likelihood that the court can provide justice for those already

parties.  *See* Fed. R. Civ. Pro. 19(a)(1); *see also Disabled Rights Action Comm. v. Las Vegas*

*Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004) (noting that a party is "necessary" if in its absence

meaningful relief cannot be afforded to those who are already joined, thus risking multiple

lawsuits on the same issue).  The litigation between Legion and Stateco on one hand and between

Stateco and the Third-Party Defendants on the other both revolve around the same Program.

However, Stateco does not assert that it is absolved of responsibility to Legion by way of the

Third-Party Defendants.  Rather Stateco has cross-complained against the Third-Party

Defendants for separate relief that is more akin to indemnity.  *See Piper Aircraft Co. v. Reyno*,

454 U.S. 235, 267 (1981) (noting that if a party is found liable it may institute a separate action

for indemnity in a separate forum, although it may be more convenient to resolve all claims in

one trial).  There is nothing inconsistent between Stateco's obtaining relief in the instant

litigation against Legion, and still obtaining meaningful relief against the Third-Party Defendants

in a separate forum.  Although litigating in separate forums may be inconvenient for Stateco, the

Court has already concluded that such inconvenience cannot overcome the validity of the forum

selection clause.

**(3) Violation of Public Policy**

Stateco asserts that enforcement of the forum selection clause is against United States

public policy.  The Third-Party Defendants assert to the contrary that enforcement of the clause is

supported by public policy, especially in light of other cases where the same clause has been

enforced as to the same defendants.

Public policy strongly favors the enforcement of forum selection clauses.  *Argueta v.*

*Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996).  In fact, forum selection clauses are

accorded special deference as an indispensable element in international trade, commerce, and

contracting.  *The Bremen*, 407 U.S. at 13-14.  In light of present-day commercial realities and

expanding international trade, forum selection clauses should control absent a strong showing

Case No. C 05-03007 JF
ORDER GRANTING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS
(JFEX1)

1    that they should be set aside. *Id.* at 15.

2        Stateco argues that it is a violation of public policy to allow these foreign companies to

3    hide behind "corporate shell games and surreptitiously inserted forum selection clauses." Opp'n

4    Mot. Dismiss at 7. Stateco asserts that the Third-Party Defendants sought out United States

5    insurance companies to participate in a Program administered in the United States that affects

6    thousands of United States insurance customers. The Third-Party Defendants assert that a state's

7    interest in protecting its businesses does not override a party's choice to freely sign an agreement

8    with a forum selection clause. The Third-Party Defendants also assert that the fact that Legion

9    cannot be sued in Bermuda is irrelevant because the claims at issue involve only Stateco and the

10    Third-Party Defendants, not Legion. The Third-Party Defendants assert that it is reasonable for

11    Stateco to obtain relief against Legion in California and against the Third-Party Defendants in

12    Bermuda, where Stateco is already engaged in litigation. As discussed above, the Court agrees

13    with the Third-Party Defendants.

14        **B. Application of Forum Selection Clause to All Claims**

15        Stateco asserts that the Shareholder Agreement, and thus the forum selection clause, does

16    not govern all of its claims. In particular, Stateco argues that the Shareholder Agreement is not

17    relevant to the litigation of claims arising during the first year of the Program's operation, and

18    that it could assert claims against the Third-Party Defendants under the Letter Agreement and

19    relating to the Commutation Agreement (which, Stateco alleges, is not part of the "Program")

20    even if the Management Agreement, the Shareholder Agreement and the Treaty all were removed

21    from the instant litigation. The Third-Party Defendants assert that the forum selection clause in

22    the Shareholder Agreement extends to all of Stateco's claims.

23        In previous litigation involving the same forum selection clause and the same Third-Party

24    Defendants, another district court held that the shareholder agreement linked "the various

25    contracts together as well as the defendants to the plaintiffs." *American Patriot Ins. Agency v.*

26    *Mutual Risk Management, Ltd.*, 248 F.Supp. 2d 779, 785 (N.D. Ill. 2003) *aff'd in part, rev'd in*

27    *part on other grounds in* 364 F.3d 884 (7th Cir. 2004). The Seventh Circuit affirmed the district

28

Case No. C 05-03007 JF
ORDER GRANTING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS
(JFEX1)

1  court's decision as to this issue. *American Patriot*, 364 F.3d at 888.  The plaintiffs in *American*

2  *Patriot* argued: (i) that their disputes with Mutual Company defendants concerned contracts other

3  than the shareholder agreement with the forum the selection clause; (ii) that their disputes

4  included non-contractual claims; and (iii) that none of the Mutual Company defendants were

5  parties to the shareholder agreement.  *Id.*  The Seventh Circuit wrote that "these are really the

6  same argument, and amount to saying that a plaintiff can defeat a forum-selection clause by its

7  choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit. If

8  this were true, such clauses would be empty."  *Id.*

9  　　　There is significant factual similarity between the instant case and *American Patriot*.  *Id.*

10  Additionally, the Ninth Circuit has held that forum selection clauses may be equally applicable to

11  contractual and tort causes of action.  *Manetti-Farrow*, 858 F.2d at 514.  The Court concludes

12  that the Shareholder Agreement in the instant case sufficiently relates to all asserted claims under

13  the Program, and thus the forum selection clause governs all disputes between Stateco and the

14  Third-Party Defendants.[16]

15

16  　　　　　　　　　　　　　　　　**V. ORDER**

17  　　　Good cause therefore appearing, IT IS HEREBY ORDERED that the Third-Party

18  Defendants' Motion to Dismiss is GRANTED.

19

20

21

22

23

24  _____

25  　　　[16] Stateco argues that the Court must decide whether the Shareholder Agreement is
governed by the date on the face of the document, June 30, 1999, or by the date it was signed by

26  the parties, October and November of 2000.  However, the effective date is irrelevant in light of
the Court's conclusion that the Shareholder Agreement controls all claims.

27

28  　　　　　　　　　　　　　　　　15

Case No. C 05-03007 JF
ORDER GRANTING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS
(JFEX1)

1

2    DATED: 10/11/06

3

4                      JEREMY FOGEL
                        United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 05-03007 JF
ORDER GRANTING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS
(JFEX1)

1   This Order has been served upon the following persons:

2

3    Jean L. Bertrand                          jlb@mjllp.com, nyp@mjllp.com

4
    Michael Brian Cavadel                      mcavadel@wolfblock.com
5

6    John P. Kern                              jkern@manatt.com, jyoung@manatt.com;
                                               gdarwish@manatt.com; KHunt@manatt.com;
7                                              SSareth@manatt.com; AScardina@manatt.com

8    Laura Anne Palazzolo                      laura.palazzolo@berliner.com,
                                               rebecca.revelez@berliner.com;
9                                              victoria.maydanik@berliner.com

10
    Wilson Kyung Park                          wkp@mjllp.com, srw@mjllp.com;
11                                             calendar@mjllp.com

12
    Anthony R. Twardowski                      atwardowski@wolfblock.com,
13                                             mcrowley@wolfblock.com

14   Douglas Y. Christian
    1735 Market Street
15   51st Floor
    Philadelphia, PA 19103-7599
16

17   Damian L. Dinicola
    1735 Market Street
18   51st Floor
    Philadelphia, PA 19103-7599
19

20

21

22

23

24

25

26

27

28
    Case No. C 05-03007 JF
    ORDER GRANTING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS
    (JFEX1)