**E-Filed 7/25/2007**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| M. DIANE KOKEN, Insurance Commissioner of the Commonwealth of Pennsylvania, acting in her official capacity as Statutory Liquidator of Legion Insurance Company and Villanova Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>STATECO INC. d/b/a STATECO INSURANCE SERVICES, et al.<br>Defendants. | Case No. C 05-03007 JF<br><br>ORDER[1] GRANTING MOTION TO DISMISS<br><br>[re: docket no. 100] |

On July 22, 2005, Plaintiff M. Diane Koken, Insurance Commissioner of the Commonwealth of Pennsylvania, acting in her official capacity as Statutory Liquidator of Legion Insurance Company ("Legion") and Villanova Insurance Company ("Villanova"), filed the instant complaint against Defendants Stateco Insurance Services ("Stateco"), a California corporation, Thomas Natoli ("Natoli"), XYZ Corps. 1-10, and Does 1-10. Plaintiff alleges five claims for relief: (1) breach of contract; (2) breach of fiduciary duty; (3) negligence; (4) alter ego and conversion; and (5) accounting. Plaintiff alleges that Legion and Villanova are entitled to money damages, costs of suit with interest, and attorneys' fees. On December 19, 2005, Defendants Stateco and Natoli filed an amended answer to Plaintiff's complaint and

---

[1] This disposition is not designated for publication and may not be cited.

counterclaims against Plaintiff, alleging five claims for relief: (1) breach of contract; (2) breach of fiduciary duty; (3) negligence; (4) conversion; and (5) accounting. On December 21, 2005, Defendants filed a third party complaint against Legion's sister companies. On January 5, 2006, Plaintiff filed a motion to dismiss Defendants' counterclaims. Defendants opposed the motion. The Court considered the parties' briefs as well as the oral argument presented at the hearing on March 31, 2006. The Court granted Plaintiff's motion to dismiss on April 4, 2006 and granted Defendants twenty (20) days from the date of the order to file any amended counterclaims. Defendants filed their Second Amended Counterclaim in a timely manner on May 2, 2006 alleging the same five claims for relief, and an additional claim for fraud. The claims against the Third-party Defendants were dismissed by the Court on October 11, 2006. The Court determined that a forum selection clause governed all disputes between Stateco and the Third-party Defendants. On February 1, 2007, Plaintiff filed the instant motion to dismiss Defendants' Second Amended Counterclaim. The Court has considered the parties briefs as well as the oral argument presented at the hearing on June 15, 2007. For reasons set forth below, the motion will be granted.

## I. BACKGROUND

This action is brought by the Statutory Liquidator of two insolvent Pennsylvania domiciled insurers against their reinsurer Stateco and Stateco's President and owner, Natoli. Plaintiff alleges the following: Stateco, an insurance producer, entered into a Management Agreement to market and sell Legion and Villanova insurance policies, effective June 30, 1999. Complaint ("Compl.") ¶¶ 12, 13. Under this agreement, Stateco is required to "collect premiums due on Legion and/or Villanova insurance policies sold through Entertainment Broker" and to remit these premiums "whether collected or not." *Id.* ¶ 14.

Natoli, who is the President and principal of Stateco and a citizen of California, retains exclusive control of Stateco. *Id.* ¶¶ 6, 20-21. Plaintiff alleges that because Natoli treats Stateco's assets as his own personal assets by commingling Stateco's funds with his own, Stateco is the

2

alter ego of Natoli. *Id.* ¶¶ 23-24. Additionally, Stateco is alleged to be undercapitalized. *Id.* ¶ 22.

Stateco solicited various customers to procure insurance policies from Legion and Villanova, but failed to collect premiums from these customers for the purchase of Legion and Villanova policies. *Id.* ¶ 17-19. As a result of failure of payment, on March 28, 2002, the Commonwealth Court of Pennsylvania (the "Commonwealth Court") issued a Rehabilitation Order placing Legion in rehabilitation and appointing Plaintiff as the Rehabilitator. *Id.* ¶ 26. The Rehabilitation Order requires the payment of insurance premiums and commissions to Plaintiff in her capacity as the Rehabilitator. *Id.* ¶¶ 27-28. It provides as follows:

> All insurance agents, managing agents, brokers or other persons having sold policies of insurance and/or collected premiums on behalf of Legion shall account for all earned premiums and commissions and shall account for and pay all premiums and commissions unearned due to policies canceled in the normal course of business, directly to the rehabilitator at the offices of Legion within 30 days of the date of this Order, or the date of receipt, whichever is later, or appear before this Court to show good cause as to why they should not be required to account to the Rehabilitator. No insurance agent, broker, or other person shall use premium monies owed to Legion for any purpose other than payment to the Rehabilitator.

*Id.* ¶ 28.

On July 25, 2003, the Commonwealth Court entered an Order of Liquidation declaring Legion insolvent and appointing Plaintiff as the Liquidator. Liquidation Order ¶¶ 1, 4. Under this Order, anyone asserting claims against Legion was required to file a proof of claim on or before June 30, 2005. *Id.* ¶ 16. "The Liquidator is vested with title to all property, assets, contracts and rights of actions of Legion." *Id.* ¶ 7. It further provides:

> All assets of Legion are hereby found to be *in custodia legis* of this Court and this Court asserts jurisdiction as follows: (a) *in rem* jurisdiction over all assets of Legion wherever they may be located and regardless of whether they are held in the name of Legion or in any other name; (b) exclusive jurisdiction over all determinations as to whether assets belong to Legion or to another party; (c) exclusive jurisdiction over all determination of the validity and amount of claims against Legion; and (d) exclusive jurisdiction over the determination of the priority of all claims against Legion.

Liquidation Order ¶ 7.

Upon the liquidation of Legion, Defendants neither remitted funds to Plaintiff nor allowed inspection of their books and records. Compl. ¶ 33. Defendants have admitted that they did not file any proof of claim to seek reimbursement of funds from Plaintiff. Opposition 6.

Defendants allege the following additional facts in their Second Amended Counterclaim: Stateco sells insurance policies to rehabilitative facilities. Second Amended Counterclaim ¶ 1. Commonwealth Risk Management ("CRM"), a subsidiary of Mutual Risk Management Ltd. ("MRM") approached Stateco in 1999 regarding Stateco's participation in a "rent-a-captive" reinsurance program (the "Program"). *Id.* ¶ 2. Rent-a-captive programs involve the participation of several components whereby Stateco would contract with Legion, a wholly-owned subsidiary of MRM, and that Legion would act as a "fronting company." *Id.* ¶ 2. MRM would acts as an "offshore captive" to account for Stateco claims and disburse to a Third-party Administrator (also a MRM subsidiary) as required. *Id.* A third company would act as the underwriter, policy insurance and rating component. *Id*. A fourth company would act as the Third Party Claims Administer, processing claims. *Id.* Numerous reinsurance companies agreed to participate in the Program with each reinsurer receiving a percentage of the overall premiums calculated according to the percentage of risk assumed. *Id.*

CRM appointed Guy Carpenter & Company ("Guy Carpenter"), a California corporation, to be CRM's agent in bringing together necessary reinsurers for the Program, including Stateco. *Id.* ¶ 4. Guy Carpenter presented a package of Program documents to Stateco, including a Property and Casualty Quota Share Reinsurance Agreement (the "Quota Share Agreement"). *Id.* ¶ 5. The named parties to the Quota Share Agreement were "Legion and Mutual Indemnity Ltd, and all other companies that are or become part of Mutual Risks Management Ltd. Group (the 'MRM Companies')" and the "Subscribing Reinsurers." *Id.* ¶ 5, Ex. A. Guy Carpenter also presented a sample document entitled Aggregate Excess of Loss Agreement (the "AEL Agreement") to be entered into between the "Reinsured," meaning Legion and the MRM Companies, and the "Reinsurers" such as Stateco. *Id.* ¶ 6. Stateco understood that pursuant to the terms of the Quota Share Agreement, Legion and all the MRM Companies were held out to

4

be a single Company. *Id.* The Quota Share Agreement provided that Legion and the MRM Companies would retain 10% of the Gross New Written Premium Income, along with a ceding commission and contingent profit, and would issue (together) various loss reports. *Id.* Pursuant to the terms of the Quota Share Agreement as presented to Stateco, Legion and the MRM Companies were held out to Stateco as one Company for accounting purposes. *Id.*

Natoli understood the Quota Share Agreement and the AEL to be representative documents by CRM in order to secure Stateco's participation in the Program. *Id.* ¶ 7. On the basis of the representations made by CRM, Natoli understood the Program to consist of a package of documents by and between Stateco on one hand and Legion and the MRM Companies whereby Stateco would sell policies and reinsure risk, and Legion and the MRM Companies were to manage the accounting. *Id.* According to Stateco, money flowed through Legion to the MRM Companies to be held on behalf of Stateco and then back from the Stateco account through the MRM Companies to Legion on an aggregate accounting basis. *Id.*

On June 30, 1999 CRS presented a three-page letter agreement (the "Letter Agreement") to Stateco following negotiations between CRS and Stateco. *Id.* ¶ 8. The Program began operating on that same day. *Id.* Stateco alleges that the Letter Agreement reflected the basic components of the Program. *Id.* On June 30, 1999 Stateco and CRS signed the Letter Agreement in California. *Id.* It contained no jurisdiction or venue clauses. *Id.* Stateco further alleges that Stateco, Legion and the MRM Companies operated under this Letter Agreement for more than a year without "formalized" written agreements governing each component of the Program. *Id.* ¶ 9.

Stateco claims that it received the Management Agreement on May 9, 2000. *Id.* ¶ 10. The Management Agreement provided that Stateco would place insurance policies and collect premiums. *Id.* The Management Agreement further provided that Stateco would retain approximately 16% of the premiums and remit the remaining 74% to Legion.[2] *Id.*

---

[2] These figures equal 90%. It is unclear if this represents a mathematical mistake in Stateco's assertions or if the Management Agreement addresses the remaining 10%.

5

Case No. C 05-03007 JF
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COUNTERCLAIMS
(JFLC3)

Stateco alleges that therefore no further discussions or negotiations occurred regarding the Management Agreement. *Id.* ¶ 10. Stateco claims to have anticipated this document pursuant to the Letter Agreement and to have expected the document to be consistent with the Program as it was then operating. *Id.* ¶ 10. Stateco further alleges that it received the Shareholder Agreement in October 2000, and that it was anticipating the Shareholder Agreement pursuant to the Letter Agreement. *Id.* ¶ 11. This was more than a year after the Program had begun operating. *Id.*

Stateco asserts that prior to its involvement in the Program, a group of companies entered into an Aggregate Excess of Loss Reinsurance Agreement with Legion (the "Treaty"). *Id.* ¶ 12. Stateco alleges that this group of companies included Mutual Indemnity Ltd., Mutual Indemnity (Barbados) Ltd., Mutual Indemnity (US), Mutual Indemnity (Bermuda), and Mutual Indemnity (Dublin) ("Mutual Treaty Companies"), all alleged MRM Companies. *Id.* The Treaty provided that the Mutual Treaty Companies would hold premiums on behalf of reinsurers (such as Stateco) until actual losses for the year were known, at which time the Mutual Treaty Companies would apportion monies held in excess of actual losses between the reinsurance companies in accordance with a separate agreement. *Id.* Stateco alleges that the Mutual Treaty Defendants held the premiums in trust on behalf of the reinsurers. *Id.* Stateco is not a signatory to the Treaty. *Id.* ¶ 13. Stateco nonetheless alleges that the Treaty is part of the "Program" because the Shareholder Agreement states that "this Agreement, the Policy and the Treaty together constitute a single insurance program . . . which is a uniquely negotiated single contract and no part of the Program would have been entered into without the other parts being in force." *Id.* at Ex. E.

The Shareholder Agreement contained a jurisdictional clause providing that it is governed and is construed according to the laws of Bermuda. *Id.* ¶14. However, Stateco argues that the clause was not part of the Program because it was not negotiated by the parties and was added more than a year into the Program. *Id.* Stateco alleges it had no choice but to execute the Shareholder Agreement in the manner in which it was presented because Stateco had already committed its clients and in excess of $300,000 to the Program under the terms of the Letter

6

Agreement. *Id.*

In April, 2003, Plaintiff, on behalf of Legion, negotiated a "Commutation Agreement" with the Mutual Treaty Companies to commute all liabilities and potential liabilities of the Mutual Treaty Companies to Legion. *Id.* ¶ 16. This agreement terminated certain programs, including Stateco's. *Id.* This agreement also terminated the Treaty and commuted all actual or potential past, present, or future claims arising thereunder. *Id.* MH Bermuda did not sign the Treaty, but the Commutation Agreement refers to certain Shareholder Agreements entered into by MH Bermuda. *Id.* The Commutation Agreement describes MH Bermuda as the intermediate parent holding company of the Mutual Treaty Defendants. *Id.* Stateco alleges that the MRM Companies turned all the funds that they held on behalf of Stateco over to Legion, although the Commutation Agreement does not require shareholders (such as Stateco) to indemnify the Mutual Treaty Companies. *Id.* ¶ 17. Stateco claims that funds held on its behalf were to be used to pay actual losses, not the estimated losses that provided the basis for the Commutation Agreement. *Id.* Stateco further claims that Stateco was not consulted by Legion, MI Bermuda, nor MH Bermuda Stateco's funds that MI Bermuda and/or MH Bermuda turned over to Legion under the Commutation Agreement in purported settlement of Stateco's obligations as a reinsurer. *Id.*

Stateco previously alleged many of these facts in its Third-party Complaint. As noted above, that pleading was dismissed by the Court because a forum selection clause governed the disputes between Stateco and the Third-party Defendants.

## II.  LEGAL STANDARD

A complaint may be dismissed as a matter of law for only two reasons:  (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984) (citing 2A James Wm. Moore, et al., Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982)). For purposes of this motion to dismiss, all allegations of material fact are taken

as true and "construed in the light most favorable to the nonmoving party." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). A complaint should not be dismissed "unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* However, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Id.* at 754-55. Motions to dismiss generally are viewed with disfavor under this liberal standard and are granted rarely. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

### III. DISCUSSION

Plaintiff moves to dismiss Defendants' Second Amended Counterclaims, arguing that these claims are no different from the counterclaims that the Court found insufficient in its Order dated April 4, 2006. Defendants argue that additional factual allegations showing that Legion and Mutual Indemnity were marketed as a single entity and describing the flow of money through the program of insurance in which Stateco, Legion, and Mutual all participated. Defendants make five arguments: (1) that their claims cannot be barred by the Liquidation Order in light of *Hawthorne Savings Bank v. Reliance Insurance Co.*, 421 F.3d 835 (9th Cir. 2005); (2) that the Liquidation Order cannot apply to them because the Pennsylvania court presiding over the liquidation of Legion and Villanova lacks personal jurisdiction over Defendants; (3) that California Insurance Code §1064.5 does not require filing of a proof of claim; (4) that their new factual allegations have remedied the deficiencies in their claim for setoff; and (5) that their claims can be sustained on a theory of "recoupment."

**1.** *Hawthorne*

Defendants assert the additional facts alleged in their current pleading show more clearly that their case is analogous to *Hawthorne*. In *Hawthorne*, an insured filed various contract-based claims under state law. 421 F.3d at 838. The insurer removed the suit to federal court on the basis of diversity of citizenship. *Id.* The insurer subsequently was placed in rehabilitation and

8

1 liquidation proceedings by the Commonwealth Court. *Id.* at 840. Plaintiff, the appointed
2 liquidator, moved to dismiss the insured's lawsuit on the ground that the Commonwealth Court
3 had exclusive jurisdiction based on the Liquidation Order. *Id.* The Ninth Circuit affirmed the
4 district court's denial of Plaintiff's motion to dismiss, holding that the Pennsylvania state court's
5 liquidation and rehabilitation orders were not enforceable because the underlying suit was an *in*
6 *personam* proceeding. *Id.* at 856.

7     This Court already has ruled that *Hawthorne* is distinguishable from the instant case, and
8 nothing in the additional facts alleged by Stateco affects that determination. The claim in
9 *Hawthorne* was asserted by a policyholder against its insurer which had no connection to the
10 insolvency proceedings; indeed, the action was already pending at the time of the insolvency.
11 *Id.* at 839-40. The *Hawthorne* court allowed the proceeding because it did not interfere with the
12 liquidation proceeding. *Id.* at 855.

13     In contrast, the instant case is inextricably intertwined with the liquidation proceeding,
14 and Stateco's counterclaims seek to interfere with those proceedings. In addition, the funds
15 Plaintiff seeks are assets of Legion's estate, not contractual debts allegedly owed by Stateco. *See*
16 *id.* at 840 ("Hawthorne filed this lawsuit against Reliance . . . alleging breach of contract . . . .")
17 As Statutory Liquidator, Plaintiff is seeking premiums for insurance policies issued by Legion
18 which Defendants placed as Legion's agent.

19     *2.* **Personal Jurisdiction**

20     *Hawthorne* also is distinguishable with respect to the issue of personal jurisdiction. In
21 *Hawthorne*, the court determined that Pennsylvania did not have personal jurisdiction over the
22 California plaintiff because the California's plaintiff's only connection with Pennsylvania was
23 the fact that it was insured by a Pennsylvania insurance company. *Id.* at 839, 850. Here,
24 Defendants entered into a long-term multi-million dollar agency relationship with a
25 Pennsylvania-domiciled insurer as the Pennsylvania insurer's agent. Compl. ¶¶ 12-14. That
26 contract (the Management Agreement) expressly provided that it was to be governed by the laws
27 of Pennsylvania. Compl. Ex. A at 6 § 19. Such an ongoing, long-term agency relationship with

28

a Pennsylvania insurer is sufficient contact with Pennsylvania. *See Harris Rutsky & Co. Ins. Services v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130-34 (9th Cir. 2003).

### 3.   Section 1064.5

Defendants renew their argument that section 1064.5 of the California Insurance Code does not require claimants against an insolvent insurer to file a proof of claim in an insolvency proceeding. Section 1064.5(a) provides:

> In a delinquency proceeding in a reciprocal state against an insurer domiciled in that state, claimants against such insurer who reside within this state may file claims either with the ancillary receiver, if any, appointed in the state, or with the domiciliary receiver. All such claims shall be filed on or before the last date fixed for the filing of claims in the domiciliary delinquency proceeding.

Cal. Ins. Code § 1064.5(a). Pennsylvania is a reciprocal state under California insurance law. *Hawthorne*, 421 F.3d at 856. Defendants Stateco and Natoli have admitted that they did not file any proof of claim in the Legion's liquidation proceeding before the established deadline either in Pennsylvania or in California. Accordingly, as this Court previously has determined, section 1064.5 bars the counterclaims of both Stateco and Natoli. While Defendants argue that this result should change based on additional factual allegations, they do not explain why this is so.

### 4.   Mutuality

Defendants next argue that the additional facts alleged in their current pleading with respect to mutuality are sufficient to state a claim for setoff. Under 40 Pennsylvania Statutes § 221.32, a setoff claim is independent of the statutory claims priorities and therefore exists whether or not a proof of claim is filed. Section 221.32(a) provides that:

> "[M]utual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this article shall be setoff and the balance only shall be allowed or paid."
> 40 P.S. § 221.32(a).

However, for setoff to be available, there must be a mutuality of debts and credits and mutuality of both time and capacity. *Koken v. Legion Ins. Co.*, 865 A.2d 945, 954 (Pa. Commw. 2004); *Prudential Reinsurance Co. v. Superior Court*, 3 Cal. 4th 1118, 1127 (1992). Mutuality in time requires that "preliquidation insurance obligations can be set off against other preliquidation obligations." *Koken*, 865 A.2d 945. Mutuality in capacity requires that "debts

10

exist between the same person or entities, although the debts may arise from multiple contracts." *Id.*; *see also Dickerson v. Dickersons Overseas Co.*, 368 Pa. 244, 249-50 (1952) (holding that defendant's setoff claims are not allowed where some parties to one contract were not parties to other contact.) "In the absence of an express mutual agreement that the subsidiary would be deemed a mutual debtor-creditor to the parent," the setoff doctrine does not extend to the debts between a parent company and its subsidiaries. *Prudential Reinsurance Co.*, 3 Cal. 4th at 1137.

This Court previously determined that the mutuality of time requirement was satisfied, but that Defendants had failed to allege adequately mutuality of capacity. April 4, 2006 Order, pgs. 10-11. Defendants allege that the newly-alleged facts more clearly demonstrate mutuality of capacity, pointing to their allegations with respect to the flow of Stateco money through Legion to Mutual Indemnity and back to Legion on behalf of Stateco on an aggregate accounting basis; the reference to the contracts constituting the Program as inseparable parts of a single insurance Program; and statements relating to the Commutation Agreement which purported to continue the net accounting between Legion and Mutual Indemnity that had defined the Program since its inception. Defendants also point to the Declaration of John P. Kern, which is filed in this case in Support of Third Party Mutual Defendants' Motion to Dismiss, to the effect that Mutual Indemnity is a wholly owned subsidiary of Mutual Holdings and that Legion is an affiliate of Mutual Holdings. Defendants argue that relationship of the affiliated companies is further explained in the Mutual Risk Management 10-K which they attach to the declaration of Thomas Natoli.

Citing *Koken*, 865 A.2d at 954, Defendants contend that as Legion and Mutual are not parent and subsidiary, an express agreement relative to mutuality is not required. Defendants are incorrect. In *Koken*, there was an express agreement allowing setoff. In *Prudential*, the court did not limit the requirement of an "express mutual agreement" to the parent-subsidiary relationship; rather, it held that despite the closeness of the affiliation between the related corporations, which were parent and subsidiary, such an express agreement was required for setoff of debts and credits of separate corporations. The court imposed this requirement of an express agreement to

11

avoid the unwanted expansion of the setoff doctrine.

Defendants do not allege that any type of setoff agreement existed here. Paragraphs 5 and 6 of the Second Amended Counterclaim allege that Counterclaim Exhibits A and B treated Legion and Mutual Indemnity as one company. This Court, however, has determined that Counterclaim Exhibits A and B were not part of the transaction between Legion and Defendants. October 11, 2006 Order, pg. 10. The agreement which was actually signed by Defendants treats Legion and Mutual Indemnity as separate entities. Defendants' Second Amended Counterclaim, Ex. C.

In addition, Defendants themselves state that Legion and Mutual Indemnity operated as separate entities with respect to debts and credits in the program ("Stateco money flowed through Legion to the MRM Companies . . . and then back . . . through the MRM Companies to Legion . . . ."). Defendants' Second Amended Counterclaim, ¶ 7. Paragraph 13 of their current pleading states that the different agreements between various companies were part of one program, not that Legion and Mutual Indemnity were one entity. Defendants' Second Amended Counterclaim, ¶ 13. Paragraph 16 alleges only that Legion and Mutual Indemnity set off their debts and credits between each other. Defendants' Second Amended Counterclaim, ¶ 16. There is no allegation that Legion ever set off Mutual Indemnity's obligations and credits with respect to Defendants against its own obligations and credits to Defendants. The additional documents submitted by Defendants do not show any practice of treating Legion and Mutual Indemnity as one company for the purposes of setoff. Because close corporate affiliation alone is insufficient to permit setoff, Defendants' setoff claim remains insufficient as a matter of law.

**5.     Recoupment**

Finally, Defendants assert that their claims for reimbursement easily could be recast as a claim for recoupment, a claim allowed by the court in *Koken*. Citing *Newbery Corp. v. Fireman's Fund Ins. Co.,* 95 F.3d 1392, 1403 (1996), Defendants argue that the Ninth Circuit liberally allows claims for recoupment where there is a logical relationship and intertwining of opposing claims. However, in *Newbery*, while the requirement of mutuality of time was relaxed,

1  the requirement of mutuality of capacity was not. 95 F.3d at 1399. The assertion of post-
2  insolvency debts arising out of the same transaction was allowed. *Id.* The issue here is lack of
3  mutuality of the parties with respect to the debts and credits, not mutuality in time. Thus,
4  Defendants may not proceed on a theory of recoupment.

## IV. ORDER

Defendants have had several opportunities to amend their counterclaims and they concede that they have no additional facts to allege. Accordingly, and good cause therefore appearing, IT IS HEREBY ORDERED that Plaintiff's motion to dismiss is GRANTED, and the Second Amended Counterclaim of Defendants is DISMISSED without leave to amend.

DATED: July 25, 2007

_____
JEREMY FOGEL
United States District Judge

13

Case No. C 05-03007 JF
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COUNTERCLAIMS
(JFLC3)

This Order has been served upon the following persons:

Jean L. Bertrand jlb@mjllp.com, nyp@mjllp.com

John P. Kern jkern@manatt.com, jyoung@manatt.com

Adrienne S. Leight asl@mjllp.com, awl@mjllp.com

Laura Anne Palazzolo laura.palazzolo@berliner.com, tonya.rogers@berliner.com

Anthony R. Twardowski atwardowski@wolfblock.com, mcrowley@wolfblock.com

Michael B. Cavadel
Wold Block Schorr and Solis-Cohen LLP
1650 Arch Street
22nd Floor
Philadelphia, PA 19103

14

Case No. C 05-03007 JF
ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COUNTERCLAIMS
(JFLC3)